UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

THOMAS WEBER, on behalf of
himself and those similarly situated,

       Plaintiff,

v.

Case No: 2:17-cv-627-FtM-38CM

PARAMOUNT
TRANSPORTATION LOGISTICS
SERVICES, LLC, R&L CARRIERS,
INC. and AFC WORLDWIDE
EXPRESS, INC.,

       Defendants.

## ORDER

This matter comes before the Court upon review of the Joint Motion for Approval of Settlement and Incorporated Memorandum of Law filed on September 25, 2018. Doc. 47. The parties request that the Court approve their settlement of the Fair Labor Standards Act ("FLSA") claims and dismiss the case with prejudice. *Id.* at 6. For the reasons stated below, the motion is denied without prejudice.

To approve the settlement, the Court must determine whether it is a "fair and reasonable resolution of a bona fide dispute" of the claims raised pursuant to the FLSA. *Lynn's Food Store, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). There are two ways for a claim under the FLSA to be settled or compromised. *Id.* at 1352-53. The first is under 29 U.S.C. § 216(c), providing for the Secretary of Labor to supervise the payments of unpaid wages owed to employees. *Id.* at 1353. The second is under 29 U.S.C. § 216(b) when an action is brought by employees

against their employer to recover back wages. *Id.* When the employees file suit, the proposed settlement must be presented to the district court for the district court to review and determine that the settlement is fair and reasonable. *Id.* at 1353-54.

The Eleventh Circuit has found settlements to be permissible when the lawsuit is brought by employees under the FLSA for back wages because the lawsuit provides

> some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.* at 1354. "Short of a bench trial, the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement . . . If the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable." *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1227 (M.D. Fla. 2009). Nevertheless, the Court must scrutinize the settlement to determine whether it is a "fair and reasonable res[o]lution of a bona fide dispute." *Lynn's Food Store*, 679 F.2d at 1355.

Plaintiff Thomas Weber ("Weber") brought this action against Defendants Paramount Transportation Logistics Services, LLC ("Paramount"), a Florida corporation; R&L Carriers, Inc. ("R&L"), an Ohio corporation; and AFC Worldwide Express, Inc. ("AFC"), a Georgia corporation, alleging Defendants misclassified him and similarly situated employees as exempt from overtime compensation in violation

of the FLSA, until Defendants reclassified them on November 1, 2016. *See* Doc. 1. ¶¶ 1, 10, 11, 18, 20. Weber alleges from December 2013 to August 2017 he "worked for Defendants"[1] as an account executive and that Defendants "operate[d] under various trade names under the R&L brand." *Id.* ¶¶ 2-3. The parties indicate Weber and Opt-in Plaintiffs Joseph Carp; Keith Hickman, Jr.; Lerato Mahlangu; Chris Poole; Jonathan Stegall; Joshua Winkler; and Patricia Reiter ("Plaintiffs") allege unpaid wages of $8,973.16 for Weber; $2,211.66 for Carp; $3,551.09 for Hickman; $5,469.87 for Mahlangu; $7,722.84 for Poole; $3,210.34 for Reiter; $6,861.84 for Stegall; and $4,983.32 for Winkler. Doc. 47 at 3-4. Plaintiffs allege Defendants failed to compensate them at a rate of one-and-one-half times their regular hourly wage for overtime worked based on their misclassification as exempt employees. *See id.* at 3; Doc. 1 at ¶¶ 24-25.

In the proposed settlement agreements, Defendants agree to pay Plaintiffs the following:[2] (1) Weber—$8,568.50 ($3,855.82 in unpaid wages; $3,855.82 in liquidated damages; and $856.86 in "mental anguish" damages); (2) Carp—$2,112.25 ($950.51 in unpaid wages; $950.51 in liquidated damages; and $211.23 in "mental anguish" damages); (3) Hickman—$3,388.19 ($1,524.69 in unpaid wages; $1,524.69 in

---

[1] Defendants AFC and R&L deny that they ever employed Weber. *See* Doc. 19 at 1; Doc. 21 at 1.

[2] The joint motion states the parties resolved Plaintiffs' claims "for approximately 95% of the alleged overtime wages owed" but it appears that the amount of unpaid wages received by Plaintiffs under the agreements equals approximately 43 percent of the alleged overtime wages owed, although the total amount of compensation received by Plaintiffs (including liquidated damages) equals approximately 95% of the alleged overtime wages owed. *See* Doc. 47 at 4; Doc. 47-1 at 4, 13-14, 23-24, 32-33, 41-42, 50-51, 58-59, 67-68.

liquidated damages; and $338.81 in "mental anguish" damages); (4) Mahlangu—$5,213.22 ($2,345.95 in unpaid wages; $2,345.95 in liquidated damages; and $521.32 in "mental anguish" damages); (5) Poole—$7,364.78 ($3,314.15 in unpaid wages; $3,314.15 in liquidated damages; and $736.48 in "mental anguish" damages); (6) Reiter—$3,062.65 ($1,378.19 in unpaid wages; $1,378.19 in liquidated damages; and $306.27 in "mental anguish" damages); (7) Stegall—$6,537.13 ($2,941.71 in unpaid wages; $2,941.71 in liquidated damages; and $653.71 in "mental anguish" damages); and (8) Winkler—$4,753.03 ($2,138.86 in unpaid wages; $2,138.86 in liquidated damages; and $475.31 in "mental anguish" damages). *See* Doc. 47 at 5; Doc. 47-1 at 4, 13-14, 23-24, 32-33, 41-42, 50-51, 58-59, 67-68. The parties dispute whether Plaintiffs were properly classified as exempt employees; whether certain of the Defendants were Plaintiffs' "employers" for purposes of FLSA liability; the amount of overtime hours Plaintiffs worked; the applicable statute of limitations; and whether liquidated damages are appropriate, but the parties reached a compromise to settle the case. Doc. 47 at 3. The proposed settlement agreements require each Plaintiff, except Reiter,[3] to release all claims against Defendants stemming from each

---

[3] The parties indicate in the motion that "[t]here is separate consideration in Plaintiffs' favor for the general release, many of the Plaintiffs have not worked for Defendants in some time such that other claims may be time barred at this point, and there are no other claims to date brought by any Plaintiff except for Opt-in Plaintiff Reiter which has been excluded from her release." Doc. 47 at 4-5 n.1. The motion does not indicate the nature of Reiter's separate claim, and Reiter's settlement agreement omits the paragraphs included in the rest of the agreements releasing Defendants from all other claims under the FLSA and all other claims of any other nature arising out of the employment relationship. *See* Doc. 47-1 at 51-52. Reiter's agreement does, however, include terms that Reiter agrees not to bring any claim against Defendants "arising out of claims for violation of the FLSA that occurred prior to November 1, 2016" and also includes a paragraph (paragraph 7) found in the other agreements stating Reiter "understands that she is releasing, discharging, and

Plaintiff's employment, not just those asserted in the Complaint. *See* Doc. 47-1 at 5-6, 14-15, 24-25, 33-34, 42-43, 59-60, 68-69.

Although the Court recognizes the policy in this circuit of promoting settlement of litigation, the Court cannot recommend approval of the settlements in this case because each of the proposed settlement agreements, except Reiter's agreement, contains a general release of claims without independent consideration[4] and Carp's agreement indicates he will be paid liquidated damages less than the compromised amount of unpaid overtime wages. *See* Doc. 47-1 at 4, 13-14, 23-24, 32-33, 41-42, 50-51, 58-59, 67-68. General releases typically are disfavored in FLSA cases. *See, e.g., Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351-52 (M.D. Fla. 2010) (proposed FLSA settlement agreement was unfair and precluded evaluation of the compromise because "a pervasive release in an FLSA settlement confers an uncompensated, unevaluated, and unfair benefit on the employer").

---

giving up all of her rights, causes of action, claims, and demands of any kind whatsoever against Defendants growing out of or in any way connected . . . with . . . her tenure with Defendants[.]" Doc. 47-1 at 51-52.

[4] In their joint motion, the parties indicate that "[n]inety percent . . . of the settlement funds [are] in consideration of the Plaintiffs' release of their FLSA claims, while ten percent . . . of the settlement funds are in separate consideration of a general release of all claims." Doc. 47 at 4 n.1. The settlement agreements themselves, however, do not indicate that any portion of the funds to be paid to each Plaintiff is in separate consideration for a general release. *See* Doc. 47-1 at 4, 13-14, 23-24, 32-33, 41-42, 50-51, 58-59, 67-68. The agreements only differentiate between the amounts in each agreement representing unpaid wages, liquidated damages, and "mental anguish" damages, but do not differentiate which amounts in each agreement are in separate consideration for the general releases. *See id.* In each agreement, the amount of unpaid wages and liquidated damages equals approximately ninety percent of the total and the amount of "mental anguish" damages equals approximately ten percent. *See id.*

As acknowledged by the parties, this Court as well as other courts within this district, however, have approved general releases in FLSA cases when the plaintiff receives compensation that is separate and apart from the benefits to which the plaintiff is entitled under the FLSA, or when such releases are mutual and thus confer a benefit on the plaintiff. Doc. 47 at 4 n.1; *see, e.g.*, *Prieto v. Scheeler's Cafe De Marco, Inc.*, No. 2:16-cv-139-FtM-99CM, 2017 WL 359220, at *3 (M.D. Fla. Jan. 9, 2017) (finding mutual general release fair and reasonable because it would ensure there would not be future litigation regarding events prior to settlement, including claims the defendants could have against the plaintiff in state court), *report and recommendation adopted*, 2017 WL 347508 (M.D. Fla. Jan. 24, 2017); *Weldon v. Backwoods Steakhouse, Inc.*, No. 6:14-cv-79-Orl-37TBS, 2014 WL 4385593, at *4 (approving settlement agreement with general release because plaintiffs received independent consideration for it); *Buntin v. Square Foot Management Company, LLC*, 6:14-cv-1394-Orl-37GJK, 2015 WL 3407866, at *2-3 (M.D. Fla. May 27, 2015) (approving settlement agreement where the defendant's general release of claims and neutral reference served as independent consideration for the plaintiff's general release).

Here, the parties have made no such showing that the general releases are supported by independent consideration, as the settlement agreements themselves are silent as to any independent consideration. *See generally* Doc. 47-1. Nor have the parties shown in the settlement agreements any other form of benefit conferred upon Plaintiffs by the releases. *See generally id.* Accordingly, the Court cannot

recommend approval of the settlement agreements with the incorporated general releases absent a showing of independent consideration in the agreements. *See Weldon*, 2014 WL 4385593, at *4. The Court will give the parties an opportunity to amend the settlement agreements to correct the offending provisions in accordance with this Order.

ACCORDINGLY, it is

**ORDERED:**

Joint Motion for Approval of Settlement and Incorporated Memorandum of Law (Doc. 47) is **DENIED without prejudice**. The parties shall have up to and including **October 23, 2018** to file revised settlement agreements in accordance with the directives set forth in this Order.

**DONE** and **ORDERED** in Fort Myers, Florida on this 3rd day of October, 2018.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record