UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

THOMAS WEBER, on behalf of
himself and those similarly situated,

       Plaintiff,

v.                                            Case No: 2:17-cv-627-FtM-38CM

PARAMOUNT
TRANSPORTATION LOGISTICS
SERVICES, LLC, R&L CARRIERS,
INC. and AFC WORLDWIDE
EXPRESS, INC.,

       Defendants.

### REPORT AND RECOMMENDATION[1]

This matter comes before the Court upon review of the Renewed Joint Motion for Approval of Settlement and Incorporated Memorandum of Law filed on October 25, 2018.  Doc. 52.[2]  The parties request that the Court approve their settlement of

---

[1] A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  See 11th Cir. R. 3-1.  **In order to expedite a final disposition of this matter, if the parties have no objection to this Report and Recommendation, they promptly may file a joint notice of no objection.**

[2] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

the Fair Labor Standards Act ("FLSA") claim and dismiss the case with prejudice. *Id.* at 2, 7. For the reasons stated below, the Court recommends that the settlement be approved, and Plaintiffs' claims be dismissed with prejudice.

To approve the settlement, the Court must determine whether it is a "fair and reasonable resolution of a bona fide dispute" of the claims raised pursuant to the FLSA. *Lynn's Food Store, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). There are two ways for a claim under the FLSA to be settled or compromised. *Id.* at 1352-53. The first is under 29 U.S.C. § 216(c), providing for the Secretary of Labor to supervise the payments of unpaid wages owed to employees. *Id.* at 1353. The second is under 29 U.S.C. § 216(b) when an action is brought by employees against their employer to recover back wages. *Id.* When the employees file suit, the proposed settlement must be presented to the district court for the district court to review and determine that the settlement is fair and reasonable. *Id.* at 1353-54.

The Eleventh Circuit has found settlements to be permissible when the lawsuit is brought by employees under the FLSA for back wages because the lawsuit provides

> some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.* at 1354. "Short of a bench trial, the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement . . . If the

parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable." *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1227 (M.D. Fla. 2009). Nevertheless, the Court must scrutinize the settlement to determine whether it is a "fair and reasonable resolution of a bona fide dispute." *Lynn's Food Store*, 679 F.2d at 1355.

Named Plaintiff Thomas Weber ("Weber") brought this action against Defendants Paramount Transportation Logistics Services, LLC ("Paramount"), a Florida corporation; R&L Carriers, Inc. ("R&L"), an Ohio corporation; and AFC Worldwide Express, Inc. ("AFC"), a Georgia corporation, alleging Defendants misclassified him and similarly situated employees as exempt from overtime compensation in violation of the FLSA, until Defendants reclassified them on November 1, 2016. *See* Doc. 1. ¶¶ 1, 10, 11, 18, 20. Weber alleges from December 2013 to August 2017 he "worked for Defendants"[3] as an account executive and that Defendants "operate[d] under various trade names under the R&L brand." *Id.* ¶¶ 2-3. Weber and certain similarly situated employees ("Plaintiffs") allege Defendants failed to compensate them at a rate of one-and-one-half times their regular hourly wage for overtime worked based on their misclassification as exempt employees. *See id.* ¶¶ 24-25. On September 25, 2018, the parties moved for the Court to approve their initial settlement agreement. Doc. 47. As provided by the initial settlement agreements, the settlement provided each Plaintiff would receive:

---

[3] Defendants AFC and R&L deny that they ever employed Weber. *See* Doc. 19 at 1; Doc. 21 at 1.

| Plaintiff | Unpaid Overtime Wages | Liquidated Damages | "Mental Anguish" Damages |
|---|---|---|---|
| Named Plaintiff Thomas Weber | $3,855.82 | $3,855.82 | $856.86 |
| Opt-in Plaintiff Joseph Carp | $950.51 | $950.51 | $211.23 |
| Opt-in Plaintiff Keith Hickman | $1,524.69 | $1,524.69 | $338.81 |
| Opt-in Plaintiff Lerato Mahlangu | $2,345.95 | $2,345.95 | $521.32 |
| Opt-in Plaintiff Chris Poole | $3,314.15 | $3,314.15 | $736.48 |
| Opt-in Plaintiff Patricia Reiter | $1,378.19 | $1,378.19 | $306.27 |
| Opt-in Plaintiff Jonathon Stegall | $2,941.71 | $2,941.71 | $653.71 |
| Opt-in Plaintiff Joshua Winkler | $2,138.86 | $2,138.86 | $475.31 |

Doc. 47-1 at 4, 13-14, 23-24, 32-33, 41-42, 50-51, 58-59, 67-68. The Court denied without prejudice the motion because the proposed settlement agreements, except Reiter's, each contained a general release of claims without independent consideration;[4] unclear language in Reiter's agreement regarding the nature of the

---

[4] In their initial motion, the parties indicated that "[n]inety percent . . . of the settlement funds [are] in consideration of the Plaintiffs' release of their FLSA claims, while ten percent . . . of the settlement funds are in separate consideration of a general release of all claims." Doc. 47 at 4 n.1. The settlement agreements themselves, however, did not indicate that any portion of the funds to be paid to each Plaintiff was in separate consideration for a general release. *See* Doc. 47-1 at 4, 13-14, 23-24, 32-33, 41-42, 50-51, 58-59, 67-68. The agreements only differentiated between the amounts in each agreement representing unpaid wages, liquidated damages, and "mental anguish" damages, but did not differentiate which amounts in each agreement were in separate consideration for the general releases. *See id.* In each agreement, the amount of unpaid wages and liquidated damages equaled approximately ninety percent of the total and the amount of "mental anguish" damages equaled approximately ten percent. *See id.*

release to which she was agreeing;[5] and concerns about opt-in Plaintiff Joseph Carp's settlement amount.[6] *See* Doc. 49 at 4 n.3., 5. On October 25, 2018, the parties filed the present motion and amended settlement agreements, seeking the Court's approval of their amended proposed agreements. Docs. 52, 52-1. Pursuant to the Court's Order, the parties filed complete versions of the agreements on November 7, 2018.[7] Docs. 53, 54, 54-1. In the amended agreements, each agreement containing a general release provides that approximately ten percent of the individual Plaintiff's settlement amount represents separate consideration for the general release, as opposed to "mental anguish" damages. *Compare* Doc. 54-1 at 4, 12-13, 21, 29, 36-37, 51-52, 60 *with* Doc. 47-1 at 4, 14, 24, 32-33, 41-42, 58-59, 68. Further, Reiter's amended agreement clarifies that her release only covers claims "growing out of or in

---

[5] The parties indicated in the initial motion that "[t]here is separate consideration in Plaintiffs' favor for the general release, many of the Plaintiffs have not worked for Defendants in some time such that other claims may be time barred at this point, and there are no other claims to date brought by any Plaintiff except for Opt-in Plaintiff Reiter which has been excluded from her release." Doc. 47 at 4-5 n.1. The motion did not indicate the nature of Reiter's separate claim, and Reiter's initial settlement agreement omitted the paragraphs included in the rest of the agreements releasing Defendants from all other claims under the FLSA and all other claims of any other nature arising out of the employment relationship. *See* Doc. 47-1 at 51-52. Reiter's initial agreement did, however, include terms that Reiter agreed not to bring any claim against Defendants "arising out of claims for violation of the FLSA that occurred prior to November 1, 2016" and also included a paragraph (paragraph 7) found in the other agreements stating Reiter "understands that she is releasing, discharging, and giving up all of her rights, causes of action, claims, and demands of any kind whatsoever against Defendants growing out of or in any way connected . . . with . . . her tenure with Defendants[.]" *Id.*

[6] The parties correctly note in their renewed motion, however, that both Carp's initial settlement agreement and the amended settlement agreement provide that Carp will receive $950.51 in unpaid overtime wages and $950.51 in liquidated damages; thus, Carp will receive equal amounts of unpaid wages and liquidated damages. Doc. 52 at 2-3; *see* Doc. 47-1 at 13-14; Doc. 54-1 at 12.

[7] The agreements filed on October 25, 2018 were missing a page from Reiter's agreement. *See* Doc. 53 at 1; Doc. 52-1 at 42-47.

any way connected directly or indirectly with her misclassification claim under the FLSA." *Compare* Doc. 54-1 at 46 *with* Doc. 47-1 at 52. As provided by the amended settlement agreements, each Plaintiff will receive the following:

| Plaintiff | Unpaid Overtime Wages | Liquidated Damages | Consideration- General Release |
|---|---|---|---|
| Named Plaintiff Thomas Weber | $3,855.82 | $3,855.82 | $856.86 |
| Opt-in Plaintiff Joseph Carp | $950.51 | $950.51 | $211.23 |
| Opt-in Plaintiff Keith Hickman | $1,524.69 | $1,524.69 | $338.81 |
| Opt-in Plaintiff Lerato Mahlangu | $2,345.95 | $2,345.95 | $521.32 |
| Opt-in Plaintiff Chris Poole | $3,314.15 | $3,314.15 | $736.48 |
| Opt-in Plaintiff Patricia Reiter | $1,531.32 | $1,531.33 | $0[8] |
| Opt-in Plaintiff Jonathon Stegall | $2,941.71 | $2,941.71 | $653.71 |
| Opt-in Plaintiff Joshua Winkler | $2,138.86 | $2,138.86 | $475.31 |

Doc. 54-1 at 4, 12-13, 20-21, 28-29, 36-37, 44, 51-52, 59-60.

Based on the parties' representations and the policy in this circuit of promoting settlement of litigation, the Court recommends the terms of the proposed settlement to be a fair and reasonable compromise of the dispute. Other courts in this district have approved settlements for a compromised monetary amount in light of the uncertainty of success on the merits, the complexity of the case, and the expense and

---

[8] Reiter's amended settlement agreement does not contain a general release. *See* Doc. 54-1 at 42-48. It appears the parties reallocated the breakdown of her settlement amount to reflect $1,531.32 for unpaid overtime wages and $1,531.33 for liquidated damages. *See id.*

length of continued litigation. *See, e.g., Diaz v. Mattress One, Inc.*, No. 6:10-CV-1302-ORL-22, 2011 WL 3167248, at *2 (M.D. Fla. July 15, 2011), *report and recommendation adopted*, 2011 WL 3166211 (M.D. Fla. July 27, 2011); *see also Dorismond v. Wyndham Vacation Ownership, Inc.*, No. 6:14-cv-63-Orl-28GJK, 2014 WL 2861483, at *3-4 (M.D. Fla. June 24, 2014); *Helms v. Central Fla. Reg'l Hosp.*, No. 6:05-cv-383-Orl-22JGG, 2006 WL 3858491, at *2 (M.D. Fla. Dec. 26, 2006).

Although general releases typically are disfavored in FLSA cases, this Court as well as other courts in this district have approved general releases in FLSA cases when the plaintiff receives compensation that is separate and apart from the benefits to which the plaintiff is entitled under the FLSA, or when such releases are mutual and thus confer a benefit on the plaintiff. *See Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351-52 (M.D. Fla. 2010) (holding the proposed FLSA settlement agreement was unfair and precludes evaluation of the compromise because "a pervasive release in an FLSA settlement confers an uncompensated, unevaluated, and unfair benefit on the employer"); *but see, e.g., Prieto v. Scheeler's Cafe De Marco, Inc.*, No. 2:16-cv-139-FtM-99CM, 2017 WL 359220, at *3 (M.D. Fla. Jan. 9, 2017) (finding mutual general release fair and reasonable because it would ensure there would not be future litigation regarding events prior to settlement, including claims the defendants could have against the plaintiff in state court), *report and recommendation adopted*, 2017 WL 347508 (M.D. Fla. Jan. 24, 2017); *Weldon v. Backwoods Steakhouse, Inc.*, No. 6:14-cv-79-Orl-37TBS, 2014 WL 4385593, at *4 (M.D. Fla. Sept. 4, 2014) (approving settlement agreement with general release because plaintiffs received independent

consideration for it). Here, the amended settlement agreements provide that each Plaintiff with a general release in his or her agreement will receive approximately 10 percent of the individual Plaintiff's total settlement amount as independent consideration. *See* Doc. 54-1 at 4, 12-13, 21, 29, 36-37, 51-52, 60.

Additionally, the "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009). Pursuant to *Bonetti*:

> the best way to insure that no conflict [of interest between an attorney's economic interests and those of his client] has tainted the settlement is for the parties to reach agreement as to the plaintiff's recovery before the fees of the plaintiff's counsel are considered. If these matters are addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement.

715 F. Supp. 2d at 1228. Here, the parties reached the settlement and agreed upon costs separately and without regard to the amount paid to Plaintiffs. Doc. 52 at 7. Defendants agree to pay Plaintiffs' attorney's fees and costs in the amount of $11,500. *Id.*; *see, e.g.,* Doc. 54-1 at 4-5. The Court recommends that the settlement agreement is fair and reasonable.

ACCORDINGLY, it is respectfully

**RECOMMENDED:**

1. The Renewed Joint Motion for Approval of Settlement and Incorporated Memorandum of Law (Doc. 52) be **GRANTED**; and

    2.    The Court enter an order **DISMISSING** with prejudice all claims asserted in this action by Plaintiffs.

**DONE** and **ENTERED** in Fort Myers, Florida on this 8th day of November, 2018.

*/s/ Carol Mirando*
CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record